# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
June 9, 2004 Session

## STATE OF TENNESSEE v. ALFRED N. MASON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-C-1465     Cheryl Blackburn, Judge**

---

**No. M2003-02305-CCA-R3-CD - Filed July 13, 2004**

---

The defendant, Alfred N. Mason, pled guilty to possession of over twenty-six grams of cocaine with the intent to sell, a Class B felony, and was sentenced as a Range I, standard offender to ten years in the Department of Correction. On appeal, he argues that the trial court erred in denying alternative sentencing. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

Richard McGee, Nashville, Tennessee, for the appellant, Alfred N. Mason.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted for possession with the intent to sell or deliver twenty-six grams or more of cocaine, possession with the intent to sell or deliver Diazepam, and possession with the intent to sell or deliver Dihydrocodeinone. On June 5, 2003, pursuant to a negotiated plea agreement, the defendant pled guilty to possession of over twenty-six grams of cocaine with the intent to sell, and the remaining counts of the indictment were dismissed. At his originally scheduled sentencing hearing on July 11, 2003, the defendant tested positive for cocaine and Benzodiazepine and, as a result, his bond was revoked and the hearing was continued to August 15, 2003.

At the sentencing hearing, the fifty-one-year-old defendant testified that he was a 1971 high school graduate and that his drug abuse problems began in 1974 or 1975. He first began

experimenting with alcohol, marijuana, and pills, and then began using heroin and cocaine. He "tried to stop [his] heroin addiction by using methadone" and underwent methadone maintenance programs. He said he had been "totally depend[e]nt on drugs for like ten or twelve years constantly, kind of in and out, a revolving door." He had been incarcerated before deciding to "get clean" in the late 1980s. He began working at a janitorial service and eventually became manager of that company in 1991 or 1992. He said he and his "significant other," Audrey Tomlin, were "straight at that point," bought a house together to provide stability for their two children, and started their own business. He and Ms. Tomlin had been together for about twenty-two years but had never married. Ms. Tomlin, a former heroin addict, was diagnosed with Hepatitis C in 1998 and began "practicing alcoholism" which drastically interfered with their business, as well as their family life. He said Ms. Tomlin had undergone drug treatment at Cumberland Heights "about three or four times" and was presently incarcerated. The defendant said he began using cocaine again in 2000, explaining that he was "under a lot of stress" from the "hustle, bustle, scuffle of trying to deal with the business, trying to deal with the kids, trying to deal with my clients, trying to deal with everything, and then going home in the evening time and trying to deal with [Ms. Tomlin]." According to the defendant, their business "was in a real financial bind in 2000, 2001, and 2003. . . . There just wasn't any money left. I mean, we were doing good to make payroll. . . . [W]e were going through lines of credit and getting lines of credit and doing all this stuff to make the business work."

As to his selling drugs, the defendant responded that he had been "[m]ore like just kind of a gofer" and had made "maybe 5,000, 6,000" dollars. Asked about the instant offense which was committed in January 2002, the defendant testified that he was taking the drugs to an acquaintance in North Nashville and that the acquaintance was paying him to "hold" the drugs for him. As payment, the acquaintance gave the defendant $500 and fourteen grams of cocaine each week. The defendant acknowledged that the fourteen grams of cocaine was for his own personal use. He admitted that he had about one hundred grams of powder cocaine, twelve or thirteen grams of crack cocaine, forty-five Diazepam pills, and thirty-nine Hydrocodone pills when the police stopped him. He acknowledged that his codefendant, Darlene Moore, was in the vehicle with him at the time and that he and Ms. Moore had had an affair, from which a son was born in 1994.

The defendant acknowledged that after he was arrested for the instant offense and while out on bond, he used drugs at his birthday party on July 8, 2003, just three days before he was due in court for his originally scheduled sentencing hearing.

The defendant's sister, Grace Mason, testified that she had temporary custody of two of the defendant's children. She said that Ms. Tomlin was currently incarcerated. She described the defendant as "a very good father" and believed he could be trusted. She acknowledged that the defendant never told her that he was using or selling drugs.

## ANALYSIS

The defendant argues that the trial court erred in sentencing him to a term of continuous confinement and contends that the court "should have placed him on community corrections after

-2-

serving one calendar year in jail with the condition that he successfully complete the Lifelines Therapeutic Treatment Program before release."

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

The Community Corrections Act was enacted to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offender." Tenn. Code Ann. § 40-36-103(1). The following offenders are eligible:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug/alcohol related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1). However, "[t]hat a defendant meets the minimum requirements of the Community Corrections Act of 1985 . . . does not mean that he is entitled to be sentenced under the Act as a matter of law or right." State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998).

According to the presentence report, the defendant has the following prior convictions: two convictions for possession of drugs, one conviction for assault, six shoplifting convictions, two convictions for petit larceny, one grand larceny conviction, and one fraud conviction. In addition, his probation has been revoked five times and he has violated parole on two occasions.

In sentencing the defendant, the trial court stated:

Now, [the defendant], you are here before the Court for sentencing on a case that you pled guilty, 2002-C-1465, possession of over twenty-six grams of cocaine for resale. It is a B felony. It's a standard Range 1 offender sentence of ten years. The B felony means that basically you don't have a presumption of any alternative sentence. Actually the only alternative sentence available to you is Community Corrections, which is also where the drug program came in. It would be Community Corrections. I don't think this is an appropriate case for the Drug Court just based on what I've heard. And basically the purposes of the sentencing statute means that I need to look at each individual sentence, make sure that there's no discrepancies in sentencing and that I considered the fact that the State prison capacities are for limited purposes. And, that is, for individuals with severe offenses, criminal histories that represent a disregard for laws and morals of society, and that efforts should be looked at about rehabilitation to see what's appropriate.

Actually given your criminal history, which is outlined in the sentencing report, this is just – based on that and the fact that you violated probation in the past, violated parole, clearly I have grounds

-4-

to just impose this sentence, because you just really – your history is such that you're just not eligible for anything. So what it leads me down to is do I want to – basically what I've been talking about – make a leap of faith. [Defense counsel] has presented a very, very, very good case. You have a family that has been pointed out and came to bat for you at a moment's notice. And, that is, your family is very interested, they've done a lot of things. You've obviously bent over backwards to help your wife in the past. But do I look at the facts and circumstances of this case as well as your criminal history to see if there's been a break with that past. Is this totally different, is this something I should consider. And I listen to you, and I listen to your family. I was very impressed with your sister. I think she has gone way beyond what she needed to do under the circumstances.

But this is what struck me as very interesting and, that is, not only – and we have this problem of your conviction, you come to court, and you're positive for not only cocaine but Benzodiazapine when you know you're going to be drug tested. You say you didn't, but I just can't imagine that you didn't know that. That is incredible. I mean, that is incredible. But what also I heard your sister say, and I hope I heard it correctly, was she didn't know anything about this until you were taken into custody, which tells me something. What does that tell me? That tells me that you didn't even make any arrangements for your children the last time you came to court. Even though you were surprised about being drug tested, that just tells me you thought you were going to walk out of here because you weren't – I don't know why you thought that. This a terribly serious offense. A hundred grams of cocaine, crack cocaine, all of this for somebody with your record. So, you know, I'm afraid, Mr. Mason, I'm just going to have to impose this sentence. Ten years in the Department of Corrections as a standard Range 1 offender. I'm going to deny any alternative sentence in this case.

You know, I realize that that's going to be very much an imposition on your family, but at the same time I also have to look at the big picture. And, that is, individuals who I have dealt with in the past have to be dealt with in a consistent manner. I have to look at what it says to the world about your coming in here and doing this. So with all due consideration to everybody, it's you that has sent yourself to prison based on your behavior and your actions. Everybody else has tried to keep you out of prison, but you were almost determined to go.

The defendant's long-term drug involvement and addiction are very unfortunate, both for him and his family. It is apparent that, in incarcerating the defendant, the trial court applied the principles of sentencing to the defendant's new crime and background. We conclude that the record supports the court's determination that the defendant should not again be granted alternative sentencing.

## <u>CONCLUSION</u>

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE